## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DONNA BUCKLES,              )
                         )
         Plaintiff,      )
                         )    CIVIL ACTION
v.                      )
                         )    No. 13-1307-JWL
CAROLYN W. COLVIN,     )
Acting Commissioner of Social Security,  )
                         )
         Defendant.     )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Commissioner's decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.    Background

Plaintiff applied for SSD and SSI, alleging disability beginning May 3, 2011.  (R. 11, 79-84).  In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  She claims that

substantial evidence does not support the Administrative Law Judge's (ALJ) residual

functional capacity (RFC) assessment, and that the ALJ did not provide specific,

legitimate reasons to discount the credibility of Plaintiff's allegations of symptoms.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual

findings are supported by substantial evidence in the record and whether she applied the

correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than

a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind

might accept to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971);

Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

2

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the

3

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

The court finds no error in the decision at issue for the reasons enumerated below.

Because a credibility determination is a necessary part of an RFC assessment, the court

begins its analysis with consideration of Plaintiff's arguments regarding the credibility

determination.  It then proceeds to her arguments that the record evidence does not

support the ALJ's RFC assessment.

## II.     The Credibility Determination

Plaintiff asserts that the ALJ discounted the credibility of her allegations of

disabling symptoms for only two reasons, because Plaintiff has a financial interest in

receiving disability benefits, and because there are certain evidentiary inconsistencies.

Plaintiff claims that this is error requiring remand because a financial interest in receiving

benefits applies to the allegations of every claimant, and because the ALJ's analysis of

the alleged evidentiary inconsistencies is not specific and is incapable of meaningful

review.  The Commissioner agrees that every claimant has a financial interest in receiving

benefits, but argues that the ALJ's statement to that effect was merely dicta indicating

why a claimant's allegations cannot be taken at face value.  She argues that the

regulations merely require that the ALJ identify in her decision the inconsistencies in the

record which justify a finding that the claimant's allegations are not credible.  Finally, the

Commissioner notes that the ALJ identified evidence "showing that the objective

findings, treatment records, and examination findings did not lend support to Plaintiff's

4

credibility" (Comm'r Br. 5), points to the inconsistencies identified by the ALJ, and argues that the ALJ properly evaluated credibility in accordance with the regulations and policies. The court agrees with the Commissioner that the ALJ did consider and identify objective findings that do not lend support to Plaintiff's allegations of debilitating pain and functional limitations.

### A.    The ALJ's Credibility Evaluation

The ALJ found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." (R. 18). She noted that Plaintiff "does have degenerative disc disease of the lumbar spine, and osteoarthritis in her left ankle, however, the objective medical evidence does not support the claimant's allegations of debilitating pain and functional limitations." Id. The ALJ then summarized the medical evidence, and pointed out that medical evidence which is inconsistent with Plaintiff's allegations: (1) "there is no indication in the record that the claimant's degenerative lumbar changes result in significant stenosis or nerve root irritation;" there was (2) full range of motion in Plaintiff's ankle; (3) examination of Plaintiff's back was largely unremarkable, and (4) Plaintiff was able to bend six inches to the floor; (5) straight leg raising was negative, (6) there was no muscle atrophy, and no motor, reflex, or sensory abnormalities; (7) Plaintiff was able to ambulate without an assistive device, and had only mild difficulties with orthopedic maneuvers; (8) testing revealed only moderate pulmonary obstruction, administration of a bronchodilator produced

5

significant improvement in lung function, (9) chest x-rays were negative, and examination

revealed clear lungs, slightly diminished breath sounds, and no use of accessory muscles

for respiration; (10) sleep studies show only mild sleep apnea, and Plaintiff tolerates the

use of a continuous positive airway pressure (CPAP) machine well; and, (11) medical

records show that Plaintiff has had no specialized mental health treatment, or inpatient

psychiatric hospitalization.  (R. 18-19).  The ALJ stated her findings regarding credibility:

> A trier of fact is required to determine a witness' credibility in consideration
> of all the circumstances, including the extent to which her testimony is
> contradicted or corroborated by other evidence, and any other
> circumstances that tend to shed light upon her credibility.  Additionally, the
> [(12)] claimant's financial interest in the outcome, and the evidentiary
> inconsistencies discussed above detract from reliance upon the claimant's
> testimony as a basis for decision-making.  The undersigned finds that
> although she has medically determinable severe impairments, these
> impairments do not cause the degree of limitations alleged by the claimant.
> When evaluated, the [(13)] claimant's subjective complaints are found to be
> somewhat exaggerated and inconsistent with the other evidence, including
> the clinical and objective findings of record, and would not be a sound basis
> for a finding of disability.

(R. 20) (numbering added to identify bases for discounting Plaintiff's allegations).

## B.     Standard for Evaluating Credibility

The Tenth Circuit has explained the analysis for considering subjective testimony

regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993)

(dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability.  Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could
> reasonably be expected to produce the alleged disabling pain.  This court

has stated:  The framework for the proper analysis of Claimant's evidence
of pain is set out in <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987).  We
must consider (1) whether Claimant established a pain-producing
impairment by objective medical evidence; (2) if so, whether there is a
"loose nexus" between the proven impairment and the Claimant's
subjective allegations of pain; and (3) if so, whether, considering all the
evidence, both objective and subjective, Claimant's pain is in fact disabling.

<u>Thompson</u>, 987 F.2d at 1488(citations and quotation omitted).

In evaluating credibility, the court has recognized a non-exhaustive list of factors

which should be considered.  <u>Luna</u>, 834 F.2d at 165-66; <u>see also</u> 20 C.F.R.

§§ 404.1529(c)(3), 416.929(c)(3).  These factors include:

the levels of medication and their effectiveness, the extensiveness of the
attempts (medical or nonmedical) to obtain relief, the frequency of medical
contacts, the nature of daily activities, subjective measures of credibility
that are peculiarly within the judgment of the ALJ, the motivation of and
relationship between the claimant and other witnesses, and the consistency
or compatibility of nonmedical testimony with objective medical evidence.

<u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995) (quoting <u>Thompson</u>, 987 F.2d at

1489).  The Commissioner has promulgated regulations suggesting relevant factors to be

considered in evaluating credibility which overlap and expand upon the factors stated by

the court:  Daily activities; location, duration, frequency, and intensity of symptoms;

factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side

effects of medications taken to relieve symptoms; treatment for symptoms; measures

plaintiff has taken to relieve symptoms; and other factors concerning limitations or

restrictions resulting from symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i-vii),

416.929(c)(3)(i-vii).

The court's review of an ALJ's credibility determination is deferential.  Credibility determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson, 987 F.2d at 1490 ("deference is not an absolute rule").  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

C.      **Analysis**

The Commissioner suggests that the ALJ's reference to Plaintiff's financial interest in receiving benefits is merely dicta explaining why a claimant's allegations cannot be taken at face value.  While it is true that such a reason is applicable to every disability claimant, and serves as a reason why every claimant's allegations cannot be taken at face value, it is also true that in this case the ALJ appeared to use that basis as one of thirteen reasons to discount Plaintiff's allegations.  Although the court finds this reason provides little weight in suggesting that a particular claimant's allegations are

8

incredible, it will not say the reason may never be relied upon in finding a claimant's allegations not credible.

Here, the ALJ found that Plaintiff has medically determinable impairments of asthma, chronic obstructive pulmonary disease, sleep apnea, degenerative disc disease, osteoarthritis, anxiety disorder, hypertension, migraines, and obesity.  (R. 13-14).  She found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (R. 18).  Therefore, she was required to consider all of the evidence, both objective and subjective.  The ALJ stated the law, that in such a case she is required to "make a finding on the credibility of [Plaintiff's] statements based on a consideration of the entire case record" (R. 17), and she stated that she had made her credibility determination "in consideration of all the circumstances."  (R. 20).  The court will take her at her word.  Hackett, 395 F.3d at 1173 (the court's general practice is to take a lower tribunal at its word when it declares that it has considered a matter.)  The ALJ stated that she considered all of the evidence, both subjective and objective, and determined on that basis that Plaintiff's allegations are not credible, and Plaintiff does not demonstrate that she did not do so.

Plaintiff asserts that "the only other factor the ALJ cited [to discount her credibility] is a conclusory allegation that [Ms.] Buckles testimony is inconsistent with the record."  (Pl. Br. 16).  However, in addition to the fact that Ms. Buckles has a financial interest in the outcome of this case, the ALJ stated 11 specific items of medical evidence which are inconsistent with Plaintiff's allegations of debilitating pain and

functional limitations; supra, reasons 1-11; and also noted his finding that Plaintiff exaggerated her complaints. (R. 18-20). Despite her assertion that the ALJ's findings are conclusory, Plaintiff does not argue that any of the reasons relied upon by the ALJ are erroneous or are not supported by the evidence, and she does not point to any fact or rule which would preclude the ALJ's reliance upon these reasons. Plaintiff has not shown how the record evidence precludes reliance upon the reasons given by the ALJ or why the ALJ's credibility determination is unworthy of deference in this case. Consequently, she has shown no error in the ALJ's credibility determination.

## III.   RFC Assessment

Plaintiff asserts that the ALJ gave significant weight to the medical opinion of Dr. Gault, the non-treating psychologist who provided a report on a consultative psychological evaluation she conducted at the request of the state agency, and to the opinions of the state agency psychologists who reviewed the record at the initial and reconsideration levels respectively, Dr. Maxfield and Dr. Schulman. But, she claims that there was a material inconsistency with regard to Plaintiff's ability to persist on tasks between those opinions and the ALJ's RFC assessment, which inconsistency the ALJ erroneously failed to address. She argues that the ALJ's failure to address the inconsistency is made more egregious because the third-party opinions of Plaintiff's co-worker, Nurse Bradley, and her daughter, Jennifer, support the doctor's opinions that Plaintiff is unable to persist.

The Commissioner argues that the ALJ properly weighed the medical opinions. She argues that the ALJ explained why he rejected the state agency consultants' opinion that Plaintiff should have limited interaction with the public. She argues further that Dr. Gaut's opinion regarding persistence, and the state agency doctors' opinion that Plaintiff's concentration and persistence was moderately limited in the ability to carry out detailed instructions was adequately accommodated by the ALJ's finding that Plaintiff is able to understand, remember, and carry out only simple instructions. With regard to the third-party opinions, the Commissioner argues that the ALJ discussed the third-party opinions of Plaintiff's husband and explained why she accorded them little weight, and that although she did not discuss the opinions of Plaintiff's co-worker or daughter, those opinions were largely cumulative and discreditable on the same bases.

In her reply brief, Plaintiff once again addressed the third-party opinions. She argues that an ALJ is required to consider all "other source" opinions, that the Commissioner admits that the ALJ ignored the opinions of the co-worker and Plaintiff's daughter, and the opinions are particularly relevant in this case because they support the medical opinions of the doctors.

## A.    The ALJ's Determination

The ALJ summarized Dr. Gaut's examination of Plaintiff, and accorded "substantial weight" to her opinion that Plaintiff "is capable of understanding and carrying out simple instructions, and would have no difficulty getting along with others or taking directions from a supervisor. (R. 19) (citing Ex. 5F at 69 (R. 250)). She accorded

"significant weight" "to the opinion of the state agency psychological consultant, whose assessment of the claimant's functional abilities is largely identical to that of Dr. Gaut." (R. 19) (citing Ex. 1A at 18 (R. 29)).[1]  But, she gave no weight to Dr. Schulman's opinion that Plaintiff should have limited interaction with the general public because that opinion found no support in Dr. Gaut's report or even in Plaintiff's reports.  Id. at 19-20.  Finally, the ALJ gave "little weight" to the third-party opinions of Plaintiff's husband because they were based on casual observation, were potentially influence by family loyalties, did not outweigh the medical evidence, and were cumulative of Plaintiff's testimony.  (R. 20) (citing Exs. 2E, 9E (R. 147-56, 182-89)).

### B.    Analysis

Plaintiff acknowledges Dr. Gaut's opinion that Plaintiff is able to understand and carry out simple tasks.  (Pl. Br. 11).  But, she asserts that Dr. Gaut questioned Plaintiff's capacity to persist on tasks because Plaintiff's "capacity for persistence depended on her physical health," and because she has "difficulty taking care of her household and herself."  Id. (citing R. 250).  However, Dr. Gaut's report does not carry the weight

---

[1]The opinion cited by the ALJ is that of Dr. Schulman who reviewed the record and provided his opinion at the reconsideration level.  (R. 28-29).  The opinions of Dr. Schulman and Dr. Maxfield, who reviewed the record and provided his opinion at the initial consideration (R. 41-42), are quite similar, but they are not identical.  The difference in the two opinions was not mentioned by either party, and because Dr. Schulman's opinion found greater limitations in Plaintiff's mental abilities than did Dr. Maxfield, the difference in the two opinions does not affect the court's determination of the issue presented here.  Nonetheless, in its analysis the court will refer only to Dr. Schulman's opinion, as that is the opinion on which the ALJ's decision relied.

assigned by Plaintiff.  Dr. Gaut stated that Plaintiff's "ability to attend daily and be

punctual is dependent upon her physical health issues."  (R. 250).  In context, this is no

more than an acknowledgment that Dr. Gaut is a psychologist, not a medical doctor, and

that she does not have the expertise to determine whether Plaintiff is physically capable of

attending daily or being punctual.  Dr. Gaut had already explained that "Ms. Buckles is

able to understand and carry out simple instructions.  Her attention and concentration

appear to be adequate for most tasks expected within a work environment.  There are no

indications that she has difficulty getting alongside with [sic] others or taking directions

from a supervisor."  Dr. Gaut's statement does no reflect an opinion that Plaintiff is

unable to persist, but rather, that if she is unable to persist, it is because of physical rather

than mental issues.

Plaintiff's assertion with regard to "difficulty taking care of her household and

herself," reflects a potential understanding of Dr. Gaut's opinion, but it does not reflect

the understanding reached by the ALJ, and the ALJ's understanding is supported by

substantial record evidence, and must, therefore, be accepted by the court.  Dr. Gaut did

not state that Plaintiff has difficulty taking care of herself or her household.  Rather, she

stated that Plaintiff "appears to have limited persistence to run a household and care for

herself."  (R. 250).  While this statement might be viewed to imply difficulties running a

household or caring for herself, it might also be view to indicate that while Plaintiff does

have mental limitations in persistence, she is still able to run a household and care for

herself.  The second understanding is clearly that reached by the ALJ in this case.

Moreover, the record evidence will support that understanding.

> In discussing Plaintiff's activities of daily living, Dr. Gaut stated:
>
> Ms. Buckles lives with her husband in a mobile home that sits on five acres.
> She enjoys music, reading, fishing and taking walks.  She reports that she is
> persistent with her hygiene.  She has difficulty with keeping a budget and
> her family comes over regularly to help her manage her household budget.
>
> Ms. Buckles makes a daily to do list and sets a goal of completing a
> minimum of three tasks.  If she manages to complete three tasks then she
> rewards herself with going to the movies.  She starts her day with a shower
> and then helps to organize her husband's medications.  She plays with her
> dogs and starts her to do list.  She is an avid reader.

(R. 248-49) (emphases added).  Dr. Gaut noted that Plaintiff has a valid driver's license,

was neatly dressed with adequate grooming and appropriate hygiene, and earned 30 out of

30 points on a formal mental examination.  (R. 49).  Dr. Gaut noted that Plaintiff could

count backwards from 20 perfectly, performed serial three additions without error, only

made one error in serial seven subtractions, and was able to spell a five-letter word

backward without error.  (R. 249).  She noted that Plaintiff could recall three of three

objects after five minutes, and that she was slightly below average on digit span memory,

remembering only six digits when average is seven.  Id.  As Plaintiff pointed out in her

brief, Dr. Gaut reported that Plaintiff appears to struggle with focus, seems to require

much energy to answer questions, and her answers are often tangential.  Id.

In these circumstances, it is clear that the ALJ's understanding of Dr. Gaut's report

is a reasonable understanding in light of this context.  In light of Dr. Gaut's consideration

14

of Plaintiff's activities of daily living, Plaintiff is persistent with her hygiene.  She came to the examination neatly dressed, with adequate grooming, and appropriate hygiene.  In these circumstance there is simply no support in Dr. Gaut's report for a conclusion that she believed Plaintiff has any other than minor limitations in persistence to care for herself.  It is easier to make a case from Dr. Gaut's report that Plaintiff has difficulties running a household, because Dr. Gaut noted that Plaintiff rewards herself when she completes three tasks on her to do list, that Plaintiff appears to struggle with focus, and that she seems to require much energy to answer questions.  Yet, Dr. Gaut's report also reports significant abilities in activities of daily living, in memory and concentration, and in intelligence, striking a virtual equipoise between ability and limitation with regard to running a household.

But, whatever "limited persistence" means in Dr. Gaut's report, it means the same thing with regard to running a household and with regard to caring for herself, because Dr. Gaut stated that Plaintiff "appears to have limited persistence to run a household <u>and</u> care for herself."  (R. 250) (emphasis added).  Because it is clear from the report that Dr. Gaut did not find that Plaintiff has significant difficulties caring for herself, the same understanding must be applied to find that Dr. Gaut did not express significant difficulties running a household.  This understanding is buttressed by the fact that in the very next sentence Dr. Gaut expressed that Plaintiff does have difficulties in handling finances, but that her family helps in that regard.  Plaintiff has not shown that Dr. Gaut opined a greater limitation in persistence than assessed by the ALJ.

15

Nonetheless, the court need not, indeed may not, substitute its understanding of Dr. Gaut's report for that of the ALJ.  It is sufficient that the ALJ's understanding is a reasonable understanding of the report which is supported by the evidence.  The fact that Plaintiff supplies a different understanding which might also be supported by the evidence is irrelevant.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  <u>Lax</u>, 489 F.3d at 1084 (citations, quotations, and bracket omitted); <u>see also</u>, <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966).

Plaintiff argues that Dr. Schulman agreed with Dr. Gaut that Plaintiff "might have difficulty concentrating for an extended period due to anxiety and physical problems," and that the ALJ purported to give significant weight to Dr. Schulman's opinion, but erred by failing to resolve the ambiguity created thereby.  (Pl. Br. 11-12) (citing R. 28-29).  Plaintiff argues that Dr. Schulman opined that Plaintiff can <u>understand</u> simple instructions, but may not have the capacity to persist on even simple tasks.  <u>Id.</u>  The court does not agree.  While Dr. Schulman opined regarding limitations in Plaintiff's mental capacities, the ALJ accorded significant weight to that opinion, and Plaintiff has not shown that the limitations assessed by the ALJ do not account for the difficulties opined by Dr. Schulman.

Dr. Schulman opined that Plaintiff is not significantly limited in understanding and remembering very short and simple instructions but that she is moderately limited in understanding and remembering detailed instructions.  (R. 28).  In similar fashion he opined that Plaintiff is not significantly limited in carrying out very short and simple instructions but that she is moderately limited in carrying out detailed instructions.  Id. He opined that Plaintiff's abilities to maintain attention and concentration for extended periods, to sustain an ordinary routine without special supervision, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods are all "not significantly limited."  (R. 29).  Dr. Schulman explained his concentration and persistence limitations in a narrative: "C[laiman]t is able to carry out simple instructions but may have difficulty with complex instructions.  She is able to attend but may have difficulty concentrating for extended periods due to her anxiety and physical forecast for the day."  Id.

To be sure, Dr. Schulman stated that Plaintiff may have difficulty concentrating for extended periods due to her anxiety and physical forecast for the day.  But, he also opined that Plaintiff is able to understand, remember, and carry out very short and simple instructions, and is able to attend.  The difficulty Dr. Schulman found with regard to concentration for extended periods was attributed to complex instructions and, in part to Plaintiff's physical condition, but the ALJ found that Plaintiff is physically able to perform a limited range of medium work and Plaintiff does not suggest error in that

17

finding.  In fact, Plaintiff did not argue error in the ALJ's physical RFC assessment, and does not address any of the opinions of the medical doctors.  Moreover, although Dr. Schulman opined that Plaintiff "may have difficulty concentrating for extended periods," he also opined that Plaintiff is "not significantly limited" in the ability to maintain attention and concentration for extended periods.  In context it is clear that Dr. Schulman's opinion provides that although Plaintiff may have difficulty concentrating for extended periods, that difficulty is not significant enough to preclude understanding, remembering, and carrying out simple instructions.  Plaintiff's argument is insufficient to manufacture an ambiguity between Dr. Gaut's and Dr. Schulman's opinions and the ALJ's RFC assessment.

Because Plaintiff has failed to show that Dr. Gaut or Dr. Schulman opined regarding significant mental difficulties with persistence, she cannot show that Nurse Bradley's or Jennifer Buckles's opinions provide support to the doctors' opinions. Moreover, both third-party opinions relate to physical, not mental, difficulties with persistence.  Plaintiff's friend and co-worker, Nurse Bradley, opined that Plaintiff becomes weak and lethargic after minimal physical exertion.  (R. 115).  Plaintiff's daughter opined that Plaintiff has no energy and a fragile constitution that makes it difficult to persist on household chores.  (Pl. Br. 12) (citing R. 116-17).  Therefore, even if the court found greater mental difficulties with persistence, those opinions would provide no support in that regard.  Plaintiff can show no prejudice from the ALJ's failure to discuss these third-party opinions with relation to her mental RFC assessment, and any

error in that regard is, therefore, harmless.  To the extent the third-party opinions relate to physical limitations, as discussed above Plaintiff did not argue error in the ALJ's physical RFC assessment, and has thereby waived any consideration in that regard.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 9th day of September 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**